**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CR-20347-DPG**

**UNITED STATES OF AMERICA,**

**v.**

**ANDRES HUMBERTO CALERO CASTRO,**

      **Defendant.**

_____/

**DEFENDANT'S AMENDED MOTION FOR DOWNWARD VARIANCE AT**
**SENTENCING AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW, Defendant, ANDRES CALERO, (hereinafter "Calero") by and through undersigned counsel and pursuant to Fed. R. Crim. P. 32 respectfully requests a downward variance under the factors set forth in § 3553(a).

**I.**       **INTRODUCTION**

In support of this request, Calero submits the following, which, when considered along with Calero's Sentencing Memorandum, demonstrates that Calero's offense and case are not adequately considered by the formulaic application of the Sentencing Guideline and the "tax loss" table. The Sentencing Commission crafted the guideline and tax loss table simply as a matter of "policy," without any empirical analysis to support it. Lost in the inherently unreliable numbers are Calero's otherwise spotless business career, lack of prior criminal convictions, his low risk of recidivism, the collateral consequences he has already suffered and will continue to suffer as a result of his case, the uniqueness of this case, and the unnecessary disruption that additional time behind bars would create to Calero's family. For all of these reasons, the Court should base Calero's sentence on a careful analysis of all the § 3553(a) factors which, together, establish that the sentence is

1

"sufficient, but not greater than necessary" to achieve the goals of sentencing as required by § 3553(a)(2) is a sentence which is not greater than 12 months and 1 day of jail time.

## MEMORANDUM

### I.      The Statutory Scheme

As the Court knows, the Sentencing Guidelines are no longer mandatory and are not even presumed to be reasonable; they are just one of many factors to be weighed when selecting a disposition that is sufficient but not greater than necessary to satisfy the purposes and goals set forth in § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Under *Gall*, the advisory Guideline range does not have "any particular weight." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (en banc). The Court must conduct its evaluation of the § 3553(a) factors and may "reject (after due consideration) the advice of the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 113 (2007).

The "overarching provision" of §3553(a) is to impose a sentence sufficient, but not greater than necessary, to meet the goals of sentencing established by Congress. If a sentence other than imprisonment would be adequate to meet those goals, then the Court must impose such an alternative. Section 3553(a) directs courts to consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the sentencing range established by the Guidelines; (4) the need for the sentence imposed to reflect the seriousness of the offense, and to deter the criminal conduct, (5) The need to avoid unwarranted sentence disparities among defendants nationally; and (6) the need to provide restitution to any victims of the offense.

II.  **Applying Section 3553(a) Factors:**

   **A.  Nature & Circumstance of the Offense.**

Of incredible importance in this case, is the need to truly understand the details of the offense as it is critical for the crafting of an appropriate sentence. In this case, Calero has been charged and has pled guilty to smuggling goods into the United States (18 U.S. Code § 545), in this case gold. The facts that give raise to this offense are as follows: Prior to the facts surrounding this case, Calero had a successful career in the finance industry, he worked for various companies as an economist. In 2018, Calero began to work for Triagono, a Colombia based company. His work for the company was in the operations section, specifically the purchasing of raw materials for the manufacture of a machine component to be shipped to the United States. At some point, Calero became aware that the machine component was not actually used for its intended purpose, but instead was a way for gold, a material from which the component was partially made, to enter the country and then be separated and sold as gold. This knowledge and continued work for the company is why Calero finds himself before this Court and he fully acknowledges that. However, it should be noted that Calero was an employee of Triagono who was paid a monthly salary. His principal responsibility was the purchase of raw materials and he had little to no responsibility regarding the planning or organizing of the criminal activity. He had no input at the initial creation of the scheme which was developed by the unindicted co-conspirators. He also had no input into the frequency or size of shipments from Triagono to the United States. Calero had little to no decision-making authority in the scheme.

### B. The History and Characteristics of the Defendant.

#### 1. *An otherwise admirable personal life story*

Before the instances surrounding this case, Calero lived as an exemplary member of the local community. Prior to the instant offense, Calero had no arrests or convictions. He has always maintained employment, has been financially self-sufficient, and maintained a close and loving relationship with his family. Most importantly, Calero is a hard-working and productive member of society. Despite his lapse of judgment in the instant case, Calero's career trajectory had been on an upward climb since completing his education in Economics.

Calero was born on September, 1984, in Cali, Colombia, to Edgar Calero and Liliana Castro. He has towo siblings, who he maintains contact with. Calero also has two children, sons, ages 11 and 9 for which he maintains an active part in their life and provides for financially. Calero came from a loving and caring household and a stable background. In addition to having no criminal background, prior to the instant offenses, Caleros' life has been free of violence, or serious physical or mental health issues. Calero was also involved in his community, regularly volunteering his time with "Vicentino Voluntary Foundation-Happy to Serve" in Cali, Colombia. This is an organization that provides services to single mothers with children suffering from disabilities. Calero volunteered approximately 4 hours per week from 2019-2022, contributing approximately 200 hours a year of volunteer time. *See Letters of Support filed on behalf of Mr. Calero.*

Calero is clearly a highly motivated and driven individual. He has demonstrated that he has the ability to put his education and experience to good use, for the benefit of his employers, as well as himself. Unfortunately, Calero also recognizes that his drive and

ambition manifested itself in the unlawful instant offenses. Calero is still young, and with the mercy of this honorable court, he can use what has happened in the instant case as a means with which he can grow and mature as a man, and a member of society.

Further demonstrating his sincere remorse, Calero has completely and fully cooperated with the Government in its investigation. Calero understands the nature of his conduct, which led to the instant criminal matter. Further, Calero has fully expressed his remorse and acceptance of the criminal nature of his actions. Calero makes no defenses regarding the illegal nature of his conduct. Calero is aware that the instant matter will have long-lasting negative ramifications on his career. These are all collateral consequences the Court may consider when deciding his ultimate sentence.

Lastly, Calero has no prior criminal history. While Calero's lack of criminal history will be partially taken into account in calculating his advisory guideline range, there is no bar to using it as a basis for a variance. *See United States v. Chase*, 560 F.3d 828, 831 (8th Cir. 2009). The Eleventh Circuit affirmed the use of this factor, in combination with others, to affirm a downward variance in *United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008), as have numerous other courts around the country[1].

## 2. Acceptance of Responsibility.

On July 12, 2022, Calero was arrested by the United States Law Enforcement at Miami International Airport, without incident. Due to his immigration status Calero has been detained since that day. As already stated, from the date of his initial arrest onward,

---

[1] *See, e.g.*, *United States v. Howe*, 543 F.3d 128, 132-33 (3d Cir. 2008); *United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005); *United States v. Marsh*, 820 F. Supp. 2d 320, 360 (S.D.N.Y. 2011); *United States v. Davis*, No. 07 Cr. 727 (H.B.), 2008 U.S. Dist. LEXIS 44030; 2008 WL 2329290 (S.D.N.Y. June 5, 2008); *United States v. Toback*, No. 01 Cr. 410, 2005 U.S. Dist. LEXIS 6778; 2005 WL 992004 (S.D.N.Y. April 14, 2005).

Calero has fully cooperated with the Government. First, he answered question asked by the Government prior to his arrest at the airport. Then subsequently has provided the Government with any information sought regarding his actions and the details of their investigations. Furthermore, Calero has willingly abandoned any claim to multiple articles of property and agreed to forfeit such property to the Government. While Calero is receiving a reduction for acceptance within the P.S.R., the restitution payments and Calero's extraordinary acceptance of his guilt, are still factors the honorable court should consider when looking at the totality of the case and Defendant.

    **C.  <u>Nature and Circumstances of the Offense</u>**

       **1.  The Arbitrariness of the Loss Table**

Calero's Base Offense Level is twenty (20), pursuant to § 2T3.1 and § 2T4.1. Calero also has a two (2) level enhancement, because the offense involved sophisticated means § 2T4.1 (b)(1). This has resulted in an adjusted offense level of twenty-two (22). After his reduction for acceptance, Calero's final guideline score is twenty (19) with a recommended guideline range of 30-37 months.

This honorable Court is free to make sentencing choices outside of the Sentencing Commission's policy positions. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008). The Court should do so and join the chorus of other courts that have found the loss table to be "of no help," *Watt*, 707 F. Supp. 2d at 151, and not a basis for "realistic guidance." *United States v. Parris*, 573 F. Supp. 2d 744, 750-51 (E.D.N.Y. 2008).

Calero contends that due to his willingness to cooperate with the Government and the details of the offense basing his sentencing solely on the tax loss table is contrary to the

Sentencing Commission's sound sentencing policy: as doing so, overstates the harm caused in the instant matter. Calero does not wish to minimize his unlawful actions. However, his guilt in the instant crimes does not make his belief that the current tax loss table calculation overstates the harm caused in this case any less true. In light of this, it is not surprising that scholars have recognized that a wooden application of the Guideline in situations like Calero's would produce unjustified, exaggerated sentences.[2] And, as discussed at various points throughout this Memorandum, examples of the judiciary's profound and nearly universal hostility to the Guideline and the excessive sentences it produces abound. The 2016 study of the judiciary's views on the loss table confirm that the trend steadily increased between 2002 and 2012. *See* Jillian Hewitt, *Fifty Shades of Gray: Sentencing Trends in Major White-Collar Cases*, 125 YALE L. J. 1018 (Feb. 2016). The Department of Justice itself has recognized that the loss Guideline has "lost the respect of a large number of judges" and that these judges have, as a result, been disregarding the Guideline entirely "with increasing frequency."[3] The loss table ignores the differences between

---

[2] *See, e.g.*, Derick R. Vollrath, *Losing The Loss Calculation: Toward A More Just Sentencing Regime In White-Collar Criminal Cases*, 59 DUKE L.J. 1001, 1020 (2009) ("The sentencing of federal white-collar criminal defendants is deeply flawed. The guidelines recommend sentences that are generally too harsh. Moreover, the guidelines place undue emphasis on the loss calculation, and imprecise measure that fails to accurately correlate with the Defendant's culpability."); Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules*, 40 AM. CRIM. L. REV. 19, 70-71 (Winter 2003) (stating that even certain Commissioners have noted the "false precision" of the monetary loss guidelines) (citation omitted); Jeffrey S. Parker & Michael K. Block, *The Limits of Federal Criminal Sentencing Policy; Or, Confessions of Two Reformed Reformers*, 9 Geo. Mason Law Rev. 1001, 1053-54 (2001) (criticizing the guideline loss table's "gratuitous increases in punishment levels," and noting the absence of any empirical research to support the loss tables).

[3] June 28, 2010, letter to Hon. William K. Sessions II, Chair of the Sentencing Commission from Jonathan Wrobleski, Director, Office of Policy and Legislation, pp. 2, 4.

violent and non-violent crimes, the kind of person each Defendant is, the complicated distinctions of each case, and is a "relatively weak indicator of the moral seriousness of the offense or the need for deterrence." *United States v. Emmenegger*, 329 F. Supp. 2d 416, 427 (S.D. N.Y. 2004).

### 2. The amount established by the Loss table, in this case, Overstates the Seriousness of the Actual Loss.

Calero does not object to the Court using the tax loss table. However, he contends that due to the details of this case the specified loss amount, $1,160,375.81, overstated the seriousness of the actual loss. The loss amount agreed to by the parties was reached by using § 2T4.1 commentary 2 which states that 25% of the items fair market value in the United States might be considered when lost tax is not readily ascertainable. This commentary note is an attempt by the guideline to put a tax loss number on cases where the exact number of tax loss is unclear. In this case, there is no actual tax or duty on imported gold. Hence, there is no actual "loss" to the United States. As a result, the parties agreed to use the above referenced metric. However, the Court should consider these case specific facts in determining a fair and just sentence in this case because said details make this case different than those in which defendant have in fact evaded taxes owed to the United States. Based on the foregoing, Calero is deserving of a downward variance and a sentence of no more than 12 months and 1 day of jail time.

### D. Respect for the Law and Just Punishment

### 1. Respect for the law

The Supreme Court recognized in *Gall* that fashioning a sentence "to promote respect for the law" does not invariably point towards harsher sentences. Referring to the "unique facts of Gall's situation," which included his voluntary rehabilitation, the Court

agreed that "a sentence of imprisonment may work to promote not respect, but derision, of the law, if the law is viewed merely as a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall v. United States*, 552 U.S. 38, 54 (2007). That would be true here as well. Especially, because Calero from a very early point has acknowledged the errors he committed in this case and has consistently sought to make things right with the Government. It is worth noting, that even prior to his arrest when questioned by law enforcement Calero complied and answered their questions. Thereafter, he agreed to request for debriefings and has provide all information in his possession.

## 2.   Just punishment and collateral consequences

As a result of the instant case, Calero has already faced and will continue to face, a loss of income, and negative career implications. The disgrace this conviction will forever have on him, and his career is immense. Calero created this situation for himself, and this is something he will atone for, for the remainder of his life.  The ramifications of Calero's actions do not end with this honorable Court's sentencing. Further, since he has relied on the financial support of his family to navigate through the legal morass, he has created for himself, Calero's arrest has already placed financial burdens on his family. Thus, the consequences of Calero's actions, including risks to his livelihood, and the financial burdens his conviction will have upon his family, exceed even what this court could impose. Numerous courts have recognized that the collateral consequences of a conviction can be nearly as harsh and far more permanent than even a short prison term[4]. Calero has

---

[4] *See, e.g., United States v. Gaind*, 829 F. Supp. 669, 671 (S.D.N.Y. 1993) (granting downward departure where Defendant was punished by the loss of his business); *United States v. Samaras*, 390 F. Supp. 805, 809 (E.D. Wis. 2005) (granting a variance in part

already and will continue to be "justly punished" for this case without the need for significant prison time. Hence, a downward variance is justified in this case and we respectfully ask for a sentence of no more than 12 months and 1 day of jail time.

**E.    Deterrence and Protection of the public.**

This factor "unquestionably envisions more severe sentences for defendants considered more likely to commit further crimes and less severe sentences for those unlikely to commit crimes." *United States v. Rodriguez*, 724 F. Supp. 1118, 1120 (S.D.N.Y. 1989). Calero is thirty-nine (39) years old, is a first-time offender, and has a profession (degree in economics). Based on his age, education, and criminal history category alone, Calero has a statistically low risk of recidivism. In imposing a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing—deterrence, protecting the public, and promoting respect for the law—the Court should, as a threshold matter, consider the statistically low risk of recidivism presented by Calero's history and personal characteristics. *See, e.g., United States v. Clay*, 583 F.3d 739 (11th Cir. 2007) (affirming variance from 188-235 to 60 months imprisonment due to finding that the Defendant was not likely to re-offend). In a similar case, much lower sentences have often been approved. *See e.g., United States v. Hochrek*, No. 09-CR-118, 2011 U.S. Dist. LEXIS 71035, at *9 (E.D. Wis. June 30, 2011) (Defendant convicted of mortgage fraud with a Guideline range of 46-57 months sentenced to a one-year split sentence of 6 months in prison and 6 months

_____

because defendant lost a good public sector job as a result of his conviction). *Cf. United States v. Coughlin*, No. 06-20005 (W.D. Ark. February 1, 2008), 2008 U.S. Dist. LEXIS 11263, at **21-27 (for white-collar crime, probation, and home detention more effectively accomplish the goals of § 3553(a)(2) than imprisonment).

home confinement, in part, because "given [the defendant's] age [50] and lack of any prior record, defendant did not pose a threat to the public").

### F.  Sentencing range produced by the Guideline

Under the current P.S.R., the total offense level is nineteen (19)[5], and the guideline recommends a sentence between thirty (30) and thirty-seven (37) months. A sentence requiring significant prison time does not serve the ends of justice. As discussed, Calero has paid dearly for his crime and additional prison time, beyond what would be necessary to assure adequate punishment in this case, is unwarranted. For said reasons, we respectfully request a sentence variance below the guideline range to a sentence of no more than 12 months and 1 day of jail time.

### G.  <u>Sentencing Disparities and the Extent of the Variance.</u>

Most courts consider that this factor looks to "national" disparities between defendants with similar records who have been found guilty of similar conduct—not disparities between codefendants. *See United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008); *United States v. Parker*, 462 F.3d 273 (3d Cir. 2006). The particular crime at issue in this case has been difficult to find in other jurisdictions. However, several cases similar to this case do exist within the district:

1.  USA v. Jesus Rodriguez, 21-cr-20529-DPG-1;

2.  USA v. Jean Carlos Sanchez Rojas, 19-cr-60280-CMA-2; and

3.  USA v. Victor Fossi Grieco, 19-cr-60280-CMA-1.

---

[5] This number may change depending on whether the Court agrees with Calero's argument regarding his tole in the offense which would lower is total guideline score.

In the case of *Rodriguez*, the defendant was accused of smuggling of approximately $141,000,000.00 worth of gold by using his armored car company to facilitate the transfers and deceive US authorities. Rodriguez ultimately plead guilty to ENTRY OF GOODS BY MEANS OF FALSE STATEMENTS and received a sentence of 2 years probation, as he was out on bond Rodriguez only served 1 day in custody. In the cases of *Sanchez Rojas* and *Fossi Grieco*, the defendants were accused of smuggling gold bars in the nose of a plane with an estimated value of $4,600,000.00. Both defendants plead guilty to Conspiracy to Commit an Offense against the United States (18 U.S.C. 371) and were sentenced to time served for the approximately 2 months they spent in custody and 1 year of supervised release.

In all of these cases, the defendants plead to conduct similar or vastly more expansive than Calero, but received sentences that will be lower than that of Calero. In this case, Calero has been in custody since July 12, 2022, that is approximately 9 months in custody. The requested sentence for Calero of 12 months and 1 day of jail time would be a significant variance from the guideline, but would still be many times larger than those received by defendants in similar cases.

## **CONCLUSION**

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate ... the crime and the punishment to ensue." *Koon*, 518 U.S. at 113. In this case, basing a sentence on the rigid following of the Sentencing Guideline would underscore the "travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guideline

calculations can visit on human beings if not cabined by common sense." *United States v. Adelson*, 441 F. Supp. 2d 506, 512 (S.D.N.Y. 2006)), aff'd, 301 Fed. Appx. 93 (2d Cir. 2008). For these reasons set forth above, we respectfully request a sentence of no than 12 months and 1 day of jail time.

Dated: March 24, 2023                    Respectfully submitted,

                                         /s/ Leonardo E. Concepcion
                                         Leonardo E. Concepcion, Esq.
                                         Concepcion Law
                                         5245 NW 36 Street,
                                         Suite 230
                                         Miami Springs, Florida, 33166
                                         Telephone: (305) 791-6529
                                         Email: LC@Lconcepcionlaw.com

## CERTIFICATE OF SERVICE

I certify that on March 24, 2023, my office electronically filed the foregoing with the Clerk of Court using the CM/ECF. I also certify that this document is being served on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF.

                                         /s/ Leonardo E. Concepcion
                                         FL Bar No.: 0106317