**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CR-20347-DPG**

**UNITED STATES OF AMERICA,**

**v.**

**LUIS VILLANUEVA PERDOMO,**

  **Defendant.**
_____/

**DEFENDANT'S MOTION FOR DOWNWARD VARIANCE AT SENTENCING AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW, Defendant, LUIS VILLANUEVA PERDOMO, (hereinafter "Villanueva") by and through undersigned counsel and pursuant to Fed. R. Crim. P. 32 respectfully requests a downward variance under the factors set forth in § 3553(a).

**I.     INTRODUCTION**

In support of this request, Villanueva submits the following, which, when considered along with Villanueva's Sentencing Memorandum, demonstrates that Villanueva's offense and case are not adequately considered by the formulaic application of the Sentencing Guideline and the "tax loss" table. The Sentencing Commission crafted the guideline and tax loss table simply as a matter of "policy," without any empirical analysis to support it. Lost in the inherently unreliable numbers are Villanueva's otherwise spotless business career, lack of prior criminal convictions, his low risk of recidivism, the collateral consequences he has already suffered and will continue to suffer as a result of his case, the uniqueness of this case, and the unnecessary disruption that additional time behind bars would create to Villanueva's family. For all of these reasons, the Court should base Villanueva's sentence on a careful analysis of all the § 3553(a) factors which, together,

1

establish that the sentence is "sufficient, but not greater than necessary" to achieve the goals of sentencing as required by § 3553(a)(2) is a sentence which is not greater than 12 months and 1 day of jail time.

## MEMORANDUM

### I. The Statutory Scheme

As the Court knows, the Sentencing Guidelines are no longer mandatory and are not even presumed to be reasonable; they are just one of many factors to be weighed when selecting a disposition that is sufficient but not greater than necessary to satisfy the purposes and goals set forth in § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Under *Gall*, the advisory Guideline range does not have "any particular weight." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (en banc). The Court must conduct its evaluation of the § 3553(a) factors and may "reject (after due consideration) the advice of the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 113 (2007).

The "overarching provision" of §3553(a) is to impose a sentence sufficient, but not greater than necessary, to meet the goals of sentencing established by Congress. If a sentence other than imprisonment would be adequate to meet those goals, then the Court must impose such an alternative. Section 3553(a) directs courts to consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the sentencing range established by the Guidelines; (4) the need for the sentence imposed to reflect the seriousness of the offense, and to deter the criminal conduct, (5) The need to avoid unwarranted sentence disparities among defendants nationally; and (6) the need to provide restitution to any victims of the offense.

## II. <u>Applying Section 3553(a) Factors:</u>

### A. Nature & Circumstance of the Offense.

Of incredible importance in this case, is the need to truly understand the details of the offense as it is critical for the crafting of an appropriate sentence. In this case, Villanueva has been charged and has pled guilty to smuggling goods into the United States (18 U.S. Code § 545), in this case gold. The facts that give raise to this offense are as follows: Prior to the facts surrounding this case, Villanueva had a successful career in the finance industry, he worked for various companies and eventually started his own company as an accountant. In 2018, Villanueva started Triagono, a Colombia based company, at the urging of an unindicted co-conspirator as a way to send gold into the United States. The unindicted co-conspirator presented the scheme as a legal way to enter gold into the United States without declaring such gold in Colombia or the US. The co-conspirator even presented Villanueva with letters from attorney and customs brokers stating that the "business plan" was legitimate. Based on this Villanueva started making shipments of a mechanical component containing gold to the unindicted con-conspirator in the United States who would then simply separate the gold from the component and sell it. Regardless of the unindicted co-conspirator's representations, Villanueva knew that the machine component was not actually used for its intended purpose, but instead was a way for gold, a material from which the component was partially made, to enter the country and then be separated and sold as gold. This knowledge and continued involvement in the scheme is why Villanueva finds himself before this Court and he fully acknowledges that.

### B. The History and Characteristics of the Defendant.

#### 1. *An otherwise admirable personal life story*

Before the instances surrounding this case, Villanueva lived as an exemplary member of the local community. Prior to the instant offense, Villanueva had no arrests or convictions. He has always maintained employment, has been financially self-sufficient, and maintained a close and loving relationship with his family. Most importantly, Villanueva is a hard-working and productive member of society. Despite his lapse of judgment in the instant case, Villanueva was a positive force in his professional community and local community. Villanueva has routinely for years been a consistent member of his local Catholic church and regularly volunteers his time and resources to various church projects such as those related to children and others less fortunate. *See letters in support filed on behalf of Villanueva.*

Villanueva was born on October, 1969, in Cali, Colombia, to Ismael Villanueva and Ana Silvia Perdomo. He has three siblings (sisters), who he maintains in close contact with. Villanueva has been married to approximately 28 years to Marta Luz Clavijo Posso. Villanueva also has one child, a daughter, age 26 which he is close to and helps provides for financially. It should be noted that Villanueva's wife, Marta, suffers from health problems specifically dysautonomia[1]. Villanueva came from a loving and caring household and a stable background. In addition to having no criminal background, prior to

---

[1] Dysautonomia is a disorder of autonomic nervous system (ANS) function. The ANS is charge of involuntary functions—things that happen without thinking—like breathing. Dysautonomia usually involves failure of the sympathetic and parasympathetic parts of the ANS.

the instant offenses, Villanueva's life has been free of violence, or serious physical or mental health issues.

Villanueva is clearly a highly motivated and driven individual. He has demonstrated that he has the ability to put his education and experience to good use, for the benefit of his community, as well as himself. Unfortunately, Villanueva also recognizes that his drive and ambition manifested itself in the unlawful instant offenses. Villanueva hopes that with the mercy of this honorable court, he can use what has happened in the instant case as a means with which he can grow and mature as a man, and a member of society.

Further demonstrating his sincere remorse, Villanueva has completely and fully cooperated with the Government in its investigation. Villanueva understands the nature of his conduct, which led to the instant criminal matter. Further, Villanueva has fully expressed his remorse and acceptance of the criminal nature of his actions. Villanueva makes no defenses regarding the illegal nature of his conduct. Villanueva is aware that the instant matter will have long-lasting negative ramifications on his career. These are all collateral consequences the Court may consider when deciding his ultimate sentence.

Lastly, Villanueva has no prior criminal history. While Villanueva's lack of criminal history will be partially taken into account in calculating his advisory guideline range, there is no bar to using it as a basis for a variance. *See United States v. Chase*, 560 F.3d 828, 831 (8th Cir. 2009). The Eleventh Circuit affirmed the use of this factor, in

combination with others, to affirm a downward variance in *United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008), as have numerous other courts around the country[2].

### 2. Acceptance of Responsibility.

On July 12, 2022, Villanueva was arrested by the United States Law Enforcement at Miami International Airport, without incident. Due to his immigration status Villanueva has been detained since that day. As already stated, from the date of his initial arrest onward, Villanueva has fully cooperated with the Government. First, he answered question asked by the Government prior to his arrest at the airport. Then subsequently has provided the Government with any information sought regarding his actions and the details of their investigations. Furthermore, Villanueva has willingly abandoned any claim to multiple articles of property and agreed to forfeit such property to the Government. While Villanueva is receiving a reduction for acceptance within the P.S.R., the restitution payments and Villanueva's extraordinary acceptance of his guilt, are still factors the honorable court should consider when looking at the totality of the case and Defendant.

### C. Nature and Circumstances of the Offense

### 1. The Arbitrariness of the Loss Table

Villanueva's Base Offense Level is twenty (20), pursuant to § 2T3.1 and § 2T4.1. Villanueva also has a two (2) level enhancement, because the offense involved sophisticated means § 2T4.1 (b)(1). This has resulted in an adjusted offense level of twenty-

---

[2] *See, e.g.*, *United States v. Howe*, 543 F.3d 128, 132-33 (3d Cir. 2008); *United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005); *United States v. Marsh*, 820 F. Supp. 2d 320, 360 (S.D.N.Y. 2011); *United States v. Davis*, No. 07 Cr. 727 (H.B.), 2008 U.S. Dist. LEXIS 44030; 2008 WL 2329290 (S.D.N.Y. June 5, 2008); *United States v. Toback*, No. 01 Cr. 410, 2005 U.S. Dist. LEXIS 6778; 2005 WL 992004 (S.D.N.Y. April 14, 2005).

two (22). After his reduction for acceptance, Villanueva's final guideline score is twenty (19) with a recommended guideline range of 30-37 months.

This honorable Court is free to make sentencing choices outside of the Sentencing Commission's policy positions. *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008). The Court should do so and join the chorus of other courts that have found the loss table to be "of no help," *Watt*, 707 F. Supp. 2d at 151, and not a basis for "realistic guidance." *United States v. Parris*, 573 F. Supp. 2d 744, 750-51 (E.D.N.Y. 2008).

Villanueva contends that due to his willingness to cooperate with the Government and the details of the offense basing his sentencing solely on the tax loss table is contrary to the Sentencing Commission's sound sentencing policy: as doing so, overstates the harm caused in the instant matter. Villanueva does not wish to minimize his unlawful actions. However, his guilt in the instant crimes does not make his belief that the current tax loss table calculation overstates the harm caused in this case any less true. In light of this, it is not surprising that scholars have recognized that a wooden application of the Guideline in situations like Villanueva's would produce unjustified, exaggerated sentences.[3] And, as

---

[3] *See, e.g.*, Derick R. Vollrath, *Losing The Loss Calculation: Toward A More Just Sentencing Regime In White-Collar Criminal Cases*, 59 DUKE L.J. 1001, 1020 (2009) ("The sentencing of federal white-collar criminal defendants is deeply flawed. The guidelines recommend sentences that are generally too harsh. Moreover, the guidelines place undue emphasis on the loss calculation, and imprecise measure that fails to accurately correlate with the Defendant's culpability."); Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules*, 40 AM. CRIM. L. REV. 19, 70-71 (Winter 2003) (stating that even certain Commissioners have noted the "false precision" of the monetary loss guidelines) (citation omitted); Jeffrey S. Parker & Michael K. Block, *The Limits of Federal Criminal Sentencing Policy; Or, Confessions of Two Reformed Reformers*, 9 Geo. Mason Law Rev. 1001, 1053-54 (2001) (criticizing the guideline loss table's "gratuitous increases in punishment levels," and noting the absence of any empirical research to support the loss tables).

discussed at various points throughout this Memorandum, examples of the judiciary's profound and nearly universal hostility to the Guideline and the excessive sentences it produces abound. The 2016 study of the judiciary's views on the loss table confirm that the trend steadily increased between 2002 and 2012. *See* Jillian Hewitt, *Fifty Shades of Gray: Sentencing Trends in Major White-Collar Cases*, 125 YALE L. J. 1018 (Feb. 2016). The Department of Justice itself has recognized that the loss Guideline has "lost the respect of a large number of judges" and that these judges have, as a result, been disregarding the Guideline entirely "with increasing frequency."[4] The loss table ignores the differences between violent and non-violent crimes, the kind of person each Defendant is, the complicated distinctions of each case, and is a "relatively weak indicator of the moral seriousness of the offense or the need for deterrence." *United States v. Emmenegger*, 329 F. Supp. 2d 416, 427 (S.D. N.Y. 2004).

### 2. The amount established by the Loss table, in this case, Overstates the Seriousness of the Actual Loss.

Villanueva does not object to the Court using the tax loss table. However, he contends that due to the details of this case the specified loss amount, $1,160,375.81, overstated the seriousness of the actual loss. The loss amount agreed to by the parties was reached by using § 2T4.1 Commentary note 2 which states that 25% of the items fair market value in the United States might be considered when lost tax is not readily ascertainable. This commentary note is an attempt by the guideline to put a tax loss number on cases where the exact number of tax loss is unclear. In this case, there is no actual tax or duty on

---

[4] June 28, 2010, letter to Hon. William K. Sessions II, Chair of the Sentencing Commission from Jonathan Wrobleski, Director, Office of Policy and Legislation, pp. 2, 4.

8

imported gold. Hence, there is no actual "loss" to the United States. As a result, the parties agreed to use the above referenced metric. However, the Court should consider these case specific facts in determining a fair and just sentence in this case because said details make this case different than those in which defendant have in fact evaded taxes owed to the United States. Based on the foregoing, Villanueva is deserving of a downward variance and a sentence of no more than 12 months and 1 day of jail time.

### D. Respect for the Law and Just Punishment

#### 1. Respect for the law

The Supreme Court recognized in *Gall* that fashioning a sentence "to promote respect for the law" does not invariably point towards harsher sentences. Referring to the "unique facts of Gall's situation," which included his voluntary rehabilitation, the Court agreed that "a sentence of imprisonment may work to promote not respect, but derision, of the law, if the law is viewed merely as a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall v. United States*, 552 U.S. 38, 54 (2007). That would be true here as well. Especially, because Villanueva from a very early point has acknowledged the errors he committed in this case and has consistently sought to make things right with the Government. It is worth noting, that even prior to his arrest when questioned by law enforcement Villanueva complied and answered their questions. Thereafter, he agreed to request for debriefings and has provide all information in his possession.

#### 2. Just punishment and collateral consequences

As a result of the instant case, Villanueva has already faced and will continue to face, a loss of income, and negative career implications. The disgrace this conviction will

9

forever have on him, and his career is immense. Villanueva created this situation for himself, and this is something he will atone for, for the remainder of his life. The ramifications of Villanueva's actions do not end with this honorable Court's sentencing. Further, since he has relied on the financial support of his family to navigate through the legal morass, he has created for himself, Villanueva's arrest has already placed financial burdens on his family. Thus, the consequences of Villanueva's actions, including risks to his livelihood, and the financial burdens his conviction will have upon his family, exceed even what this court could impose. Numerous courts have recognized that the collateral consequences of a conviction can be nearly as harsh and far more permanent than even a short prison term[5]. Villanueva has already and will continue to be "justly punished" for this case without the need for significant prison time. Hence, a downward variance is justified in this case and we respectfully ask for a sentence of no more than 12 months and 1 day of jail time.

**E.    Deterrence and Protection of the public.**

This factor "unquestionably envisions more severe sentences for defendants considered more likely to commit further crimes and less severe sentences for those unlikely to commit crimes." *United States v. Rodriguez*, 724 F. Supp. 1118, 1120 (S.D.N.Y. 1989). Villanueva is fifty-three (53) years old, is a first-time offender, and has a profession (a degree in accounting). Based on his age, education, and criminal history category alone,

---

[5] *See, e.g., United States v. Gaind*, 829 F. Supp. 669, 671 (S.D.N.Y. 1993) (granting downward departure where Defendant was punished by the loss of his business); *United States v. Samaras*, 390 F. Supp. 805, 809 (E.D. Wis. 2005) (granting a variance in part because defendant lost a good public sector job as a result of his conviction). *Cf. United States v. Coughlin*, No. 06-20005 (W.D. Ark. February 1, 2008), 2008 U.S. Dist. LEXIS 11263, at **21-27 (for white-collar crime, probation, and home detention more effectively accomplish the goals of § 3553(a)(2) than imprisonment).

Villanueva has a statistically low risk of recidivism. In imposing a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing—deterrence, protecting the public, and promoting respect for the law—the Court should, as a threshold matter, consider the statistically low risk of recidivism presented by Villanueva's history and personal characteristics. *See, e.g., United States v. Clay*, 583 F.3d 739 (11th Cir. 2007) (affirming variance from 188-235 to 60 months imprisonment due to finding that the Defendant was not likely to re-offend). In a similar case, much lower sentences have often been approved. *See e.g., United States v. Hochrek*, No. 09-CR-118, 2011 U.S. Dist. LEXIS 71035, at *9 (E.D. Wis. June 30, 2011) (Defendant convicted of mortgage fraud with a Guideline range of 46-57 months sentenced to a one-year split sentence of 6 months in prison and 6 months home confinement, in part, because "given [the defendant's] age [50] and lack of any prior record, defendant did not pose a threat to the public").

### F. Sentencing range produced by the Guideline

Under the current P.S.R., the total offense level is nineteen (19), and the guideline recommends a sentence between thirty (30) and thirty-seven (37) months. A sentence requiring significant prison time does not serve the ends of justice. As discussed, Villanueva has paid dearly for his crime and additional prison time, beyond what would be necessary to assure adequate punishment in this case, is unwarranted. For said reasons, we respectfully request a sentence variance below the guideline range to a sentence of no more than 12 months and 1 day of jail time.

### G. **Sentencing Disparities and the Extent of the Variance.**

Most courts consider that this factor looks to "national" disparities between defendants with similar records who have been found guilty of similar conduct—not

11

disparities between codefendants. *See United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008); *United States v. Parker*, 462 F.3d 273 (3d Cir. 2006). The particular crime at issue in this case has been difficult to find in other jurisdictions. However, several cases similar to this case do exist within the district:

1. USA v. Jesus Rodriguez, 21-cr-20529-DPG-1;
2. USA v. Jean Carlos Sanchez Rojas, 19-cr-60280-CMA-2; and
3. USA v. Victor Fossi Grieco, 19-cr-60280-CMA-1.

In the case of *Rodriguez*, the defendant was accused of smuggling of approximately $141,000,000.00 worth of gold by using his armored car company to facilitate the transfers and deceive US authorities. Rodriguez ultimately plead guilty to ENTRY OF GOODS BY MEANS OF FALSE STATEMENTS and received a sentence of 2 years probation, as he was out on bond Rodriguez only served 1 day in custody. In the cases of *Sanchez Rojas* and *Fossi Grieco*, the defendants were accused of smuggling gold bars in the nose of a plane with an estimated value of $4,600,000.00. Both defendants plead guilty to Conspiracy to Commit an Offense against the United States (18 U.S.C. 371) and were sentenced to time served for the approximately 2 months they spent in custody and 1 year of supervised release.

In all of these cases, the defendants plead to conduct similar or vastly more expansive than Villanueva, but received sentences that will be lower than that of Villanueva. In this case, Villanueva has been in custody since July 12, 2022, that is approximately 9 months in custody. The requested sentence for Villanueva of 12 months and 1 day of jail time would be a significant variance from the guideline, but would still be many times larger than those received by defendants in similar cases.

## CONCLUSION

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate ... the crime and the punishment to ensue." *Koon*, 518 U.S. at 113. In this case, basing a sentence on the rigid following of the Sentencing Guideline would underscore the "travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guideline calculations can visit on human beings if not cabined by common sense." *United States v. Adelson*, 441 F. Supp. 2d 506, 512 (S.D.N.Y. 2006)), aff'd, 301 Fed. Appx. 93 (2d Cir. 2008). For these reasons set forth above, we respectfully request a sentence of no than 12 months and 1 day of jail time.

Dated: March 24, 2023                                       Respectfully submitted,

/s/ Leonardo E. Concepcion
Leonardo E. Concepcion, Esq.
Concepcion Law
5245 NW 36 Street,
Suite 230
Miami Springs, Florida, 33166
Telephone: (305) 791-6529
Email: LC@Lconcepcionlaw.com

## CERTIFICATE OF SERVICE

I certify that on March 24, 2023, my office electronically filed the foregoing with the Clerk of Court using the CM/ECF. I also certify that this document is being served on all counsel of record either by transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Leonardo E. Concepcion
FL Bar No.: 0106317